THE BURLINGTON AND MISSOURI RIVER RAILROAD
COMPANY IN NEBRASKA, PLAINTIFF IN ERROR, V.
CHRISTIAN C. SHOEMAKER, DEFENDANT IN ER-
ROR.

1. **Railroads:** DAMAGE TO STOCK. Under the provisions of sec-
tions one and two of Chap. 72, of Comp. Statutes, where a
party's horse gets on the railroad track for the want of a fence,
such as the law requires the company to erect and maintain to
enclose its track, and while on or near the track is frightened by
a passing train, and in its flight is injured by falling through a
bridge on the line of the railroad, and no negligence or willful
misconduct is chargeable to the agents of the company in charge
of the train at the time, and where no injury is done to the
horse by any actual collision or contact with the engine or cars
of the train, the railroad company will not be liable to the
owner of the horse for such injury. See *Schurtz v. I. B. & W.
R. R. Co.*, 107 Ill. R., 577.

2. ———: ———: STATUTE CONSTRUED. The true meaning of
sections one and two of Chap. 72, Comp. Stat., is, that the injury
to stock must be caused by actual collision; that is, it must be
done by the agents, engineers, or cars of the company, or the
locomotives, engines, or trains of any other corporation per-
mitted and running over or upon the said road, or the willful
misconduct of the train men in the course of their employment
to make the company liable. Id.

3. ———: ———. Consequential damages resulting from fright
to animals, not caused by actual collision, or any negligence or
willful misconduct on the part of the servants of the company,
are not embraced in the statute. Id.

ERROR to the district court for Otoe county. Tried be-
low before POUND, J.

*T. M. Marquett* and *J. W. Deweese,* for plaintiff in er-
ror, cited: 1 Rorer on Railroads, 641. 2 Id., 1579. *Hadden
v. Rust,* 39 Ill., 194. *R. R. Co. v. Hasket,* 10 Ind., 409.
*R. R. Co. v. Thomas,* 60 Id., 107.

*C. M. West* and *F. M. Fee,* for defendant in error.
24

COBB, CH. J.

This action was brought in the district court of Otoe county by Christian C. Shoemaker against the B. & M. R. R. Co. in Nebraska. Said plaintiff, by his petition, after alleging that the defendant is a corporation, etc., states as his cause of action:

"That on the evening of the fourth day of June, or the morning of the fifth day of June, 1883, said defendant was operating its railroad in Otoe county, Nebraska, said road had been open for more than six months for use in said county. While so operating the same at the time above stated, at a place on said road where it was required by law to fence its track, but had failed to do so, said defendant, by its agents and employes, ran an engine and train of cars over and against one gray mare, being the property of plaintiff, and of the value of $175, by reason of which said mare was injured, from which injuries she died. Wherefore plaintiff claims a judgment against said defendant for the sum of $175 and costs."

The defendant's answer consists of a general denial. The case was tried to a jury, who found and rendered their verdict for the plaintiff, and assessed his damages at $137.75.

The defendant's motion for a new trial having been overruled, it brings the cause to this court on error; there are but two substantial errors assigned.

"First. The court erred in refusing to give the first instruction requested by the plaintiff herein marked '1st.'

"Second. The court erred in giving the third instruction, marked '3,' on its own motion."

The instruction No. 1 requested by defendant is as follows:

"1. The jury are instructed that the evidence in the case will not warrant you in finding a verdict against the defendant. You will therefore decide for the defendant."

Instruction No. 3, by the court on its own motion, is as follows:

"3.   If the place where said accident to plaintiff's mare happened was not within the limits of any town, city, or village, it was the duty of the defendant to erect and maintain fences on the sides of the railroad on the part thereof open for use, suitable and amply sufficient to prevent cattle and horses, etc., from getting on such railroad."

It appears from the evidence as set out in the bill of exceptions that the plaintiff was the owner of a certain gray mare, which, on the day of the night in question, was lariated by him out on the prairie, and it is supposed that she got loose from the lariat "and happened down on the railroad for some cause, where McKee had a pasture fenced, and wanted to go there I suppose."

That on the following morning she was found in McKee's pasture near the railroad, with her leg broken. There were animal's tracks on the side of the railroad passing along on the south side of the track for nearly an eighth of a mile to near a bridge across a considerable creek.   Upon the bridge there were hairs and other signs indicating that a gray animal had fallen from the bridge into the creek.   There were also signs on the margin of the creek below showing where it had fallen; and by following the tracks out of the creek and through a cornfield and pasture, the owner was enabled to find the mare in her crippled condition.   The owner, as well as another witness, testified to hearing a train, and only one, pass during the night.   On the other hand, two witnesses on the part of the defendant, to-wit, the conductor of the said train and another person who was on the caboose of a train which passed that point between twelve and one o'clock that night, testified that that was the only train which passed there that night; that said train consisted of nineteen freight cars and a caboose, going east; that between twelve and one o'clock, about a mile and a half west of Syracuse, the train being running at about the rate of fifteen miles per hour, the witness (one of them) standing

looking out of the south door of the caboose with his conductor's lantern in his hand, the train passed two animals, one dark and one gray, the gray one ran a hundred yards by the side of the freight cars and as the way car passed her she jumped right in the center of the track; that that was the last the witness saw of her; that the train passed the bridge very shortly after passing the animals and where the gray mare jumped on to the track; that neither the engine nor any part of the train struck either of the animals or any animal on that night; that the animals seemed greatly frightened and ran for a considerable distance along and near the track before the train passed them.

There was thus not only no evidence of the train having struck the animal, but the evidence of two witnesses that the train passed her without striking her.

Our statute, sections one and two of chapter 72, Comp. Stat., after providing that railroads shall be fenced, etc., proceeds as follows: "And so long as such fences and cattle guards shall not be made after the time hereinbefore prescribed for making the same shall have elapsed, and when such fences and guards, or any part thereof, is not in sufficiently good repair to accomplish the objects for which the same as herein prescribed is intended, such railroad corporation and its agents shall be liable for any and all damages which shall be done by the agents, engineers, or trains of any such corporation, or by the locomotives, engines, or trains of any other corporation permitted and running over or upon their said railroad, to any cattle, horses, sheep, or hogs thereon."

Again, "Any railroad company hereafter running or operating its road in this state, and failing to fence on both sides thereof against all live stock running at large, at all points, shall be absolutely liable to the owner of any live stock injured, killed, or destroyed by their agents, employes, or engineers, or by the agents, employes, or engines belong-

ing to any other railroad company running over and upon such road or there being."

The statutes of Illinois, Indiana, and Missouri on the subject of the liability of railroad companies, whose tracks are suffered to remain unfenced, for live stock killed by their trains, are substantially the same as those of our own state above quoted, and the supreme courts of each of those states in the cases cited in the brief of counsel have, upon facts quite similar to those of the case at bar, held, that an actual and direct collision by the engine or train, or some portion of it, with the animal killed or injured is indispensable to a holding of liability on the part of the company. The reasoning of these cases rests chiefly upon the meaning of the words of the statute. That the language of the statute making the company "liable for all damage which may be done by the 'agents, engines, or cars' of such corporations to cattle, horses, or other stock" could not be extended to embrace damages done to themselves by such stock in consequence of fright, although such fright might be caused by the sight or sound of passing trains on such unfenced railroad. The opinion in the Missouri case is predicated, in part, also, upon the object of the act declaring the liability in cases of damage to stock by the " agents, engines, or cars " of railroad companies whose tracks remain unfenced. Such object being declared to have been " not exclusively for the benefit and protection of the owners of stock who were liable to suffer loss and damage, but also as a public regulation for the safety of passengers, and the traveling public, who are exposed to danger and peril in case of collision." To these considerations the following may be added : One object which the legislature had in view in the passing of these provisions was to induce the railroad companies to fence their tracks, and keep them fenced. It therefore sought to hold the owners of unfenced railroads absolutely liable for such damage to live stock as only might proximately result

from the *unfenced* condition of the railroad, and not for such as might be common to all railroads fenced as well as unfenced. The statute of no state, to my knowledge, has prescribed the distance which the fence shall be from the track over which the trains pass. And in point of fact, in the case of some of the best fenced railroads they are at some points very near. And any person of experience knows that it often occurs that horses and teams driven on the highway near a railroad track, but outside of the fence, become frightened at the sight and sound of passing trains, and by reason of such fright damage themselves, their drivers, and the vehicles to which they are attached. The liability of such animals to become thus frightened, and to become thus damaged, depends in no degree upon the fenced or unfenced condition of the railroad. Hence it is obvious that in declaring an absolute liability for damage to live stock by trains in cases where the railroad should be suffered to remain unfenced as an inducement and incentive to railroad companies to fence their tracks, and thus protect the lives of the traveling public, as well as the property of the citizens of the country through which the railroad passes, from loss by collisions, the legislature only had in view such damages to live stock as were practically confined to unfenced railroads, and not such as were common to all railroads fenced as well as unfenced.

Therefore, upon reason as well as upon authority, the case made by the plaintiff in the court below failed to establish a liability upon the railroad company for the damage to the gray mare, and the district court should have told the jury so.

The judgment of the district court is reversed, and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.